CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

**MAR 26 2013**

JULIA C. DUDLEY, CLERK
BY: _/s/_
    DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| JOHN MICHAEL MASON, | ) | |
| | ) | Case No. 7:12-cv-00412 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| WARDEN OF SUSSEX I STATE PRISON, | ) | By: James C. Turk |
| | ) | Senior United States District Judge |
| Respondent. | ) | |

Petitioner John Michael Mason ("Petitioner" or "Mason"), proceeding pro se, filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. Respondent filed a Motion to Dismiss, ECF No. 4, and Petitioner has filed a response. ECF No. 12. Accordingly, the matter is now ripe for decision. For the reasons stated below, Respondent's Motion to Dismiss is **GRANTED** and the Petition for a Writ of Habeas Corpus is **DISMISSED**.

### I.      Factual and Procedural Background

Mason was tried before a jury in the Circuit Court for the City of Staunton and was convicted of murder in the first degree, in violation of Va. Code § 18.2-32, and use of a firearm in the commission of a felony, in violation of Va. Code § 18.2-53.1. ECF No. 6, Ex. 1 at 2. He was sentenced to life plus three years in prison.[1] Id. Viewed in the light most favorable to the Commonwealth, see Jackson v. Virginia, 443 U.S. 307, 319 (1979), the evidence presented at trial is described below.[2]

---

[1] In a separate bench trial, Mason was found guilty of possessing a firearm while a convicted felon, in violation of Va. Code § 18.2-308.2, and sentenced to five years in prison. ECF No. 6, Ex. 1.

[2] The facts are adapted from the Virginia Court of Appeals' order denying Mason's petition for appeal. Mason v. Commonwealth of Virginia, No. 2583-09-3 (Va. Ct. App. Apr. 13, 2010), attached as Exhibit 2 to ECF No. 6. Additional facts were taken from testimony at trial, as set forth in the trial transcript (hereinafter "Trial Tr."), which is a part of the record before this Court. See ECF No. 14.

### A.  Facts of the Offense

The victim, Amanda Bush, had ended her relationship with Mason on a Friday evening, and the murder occurred on a Sunday. On Sunday afternoon, Jesse Jordan, a minor, testified that Mason arrived in his vehicle at the Jordan residence in Staunton, where Amanda worked as a nanny. According to Jesse, Amanda met Mason outside to get money and a ring from him. Jordan stated he saw the two arguing while they were standing near Mason's vehicle. He saw the victim lean over like she was getting in the vehicle and then, as he looked back at his siblings in the house, he heard a "bang" from outside. Jordan stated that Mason quickly ran around the vehicle, got into the driver's seat and drove away as fast as he could, leaving the passenger door open. He then saw the victim lying in the street bleeding. A woman driving on the same street testified Mason almost struck her vehicle as he sped away and that she knew it was Mason. She also identified him out of a photo line-up she was shown by police. According to several witnesses, the shooting occurred shortly before 3 p.m.

Mason was located at around 8 p.m. that same evening, approximately a three-hour drive away. His car had been in a one-vehicle accident about a half-mile from Interstate 77, just off the last Virginia exit. State Trooper Horton, who had reported to the scene of the accident after it was phoned in to police, found Mason alert and awake behind the wheel of his vehicle, which had gone off the road and was in a weedy area. During the stop, Mason lied to Trooper Horton about the source of the blood found on the passenger side door of the vehicle, telling him it belonged to Mason's brother. Tests later revealed that the blood on both the car door and Mason's pants contained Amanda's DNA.[3] At the time of the traffic stop, Trooper Horton recovered from Mason's person the murder weapon, which was a gun that belonged to Mason's

---

[3] The DNA analyst testified that the chance the DNA had come from anyone other than Amanda was one in greater than 6.5 billion. Trial Tr. at 200-01.

2

mother. In recorded telephone calls Mason made while he was in jail, Mason admitted he stole his mother's gun, and he discussed the possibility of avoiding conviction by asserting an insanity-type defense or claiming that he was on a drugs at the time of the shooting.[4]

In addition, two inmates testified that Mason discussed the incident with them. Gary Frees testified Mason bragged about the killing, he did not show remorse, and he discussed "beating" the charges by pleading insanity. Frees also testified that Mason said he wished he had killed a child who may have witnessed the incident. Another inmate, James Farris, also testified Mason said, "I told the bitch I was going to kill her. I guess she didn't believe me."

## B.  Procedural Background

After being convicted in the Circuit Court for the City of Staunton, Mason appealed his convictions to the Court of Appeals of Virginia ("CAV"). On appeal, he raised six arguments. First, he argued that the trial court erred in admitting a dashboard surveillance camera recording of the traffic stop during which the murder weapon was found. Second, he challenged the sufficiency of the Commonwealth's evidence as to the first-degree murder charge and the jury's finding of premeditation. Third, he contended that the trial court abused its discretion by denying his motion for a mistrial based on a remark by the prosecutor during closing arguments.[5] Fourth, he posited that the trial court erred by not admitting certain evidence of the violent relationship between victim and Mason, and specifically, evidence that showed on prior occasions, the victim

---

[4] Neither the audio recordings of Mason's phone calls from jail nor the DVD showing Horton at the scene of the accident and taking Mason into custody have been provided to this Court, nor were they transcribed as part of the trial transcript. There was, however, some testimony concerning both and the Court relies on that testimony.

[5] The prosecutor made the statement that "Was there any – any evidence of any rational explanation as to why this defendant snuffed out the life of Amanda Bush . . ." Trial Tr. at 33-34. Defense counsel moved for a mistrial, contending that the statement improperly shifted the burden of proof to Mason. Id. at 333-35. The trial court implicitly denied the motion for mistrial, but also immediately gave a curative instruction to the jury. Id. at 335.

had assaulted Mason and he had not reacted physically at all. Fifth, he argued the trial court erred by refusing to give his proffered jury instructions. Sixth and finally, he argued that the trial court erred by finding him guilty of possession of a firearm after having been convicted of a felony. See ECF No. 6, Ex. 2. The CAV denied his petition for appeal on April 13, 2010. Id. Mason then appealed to the Supreme Court of Virginia ("SCV"), which also refused his petition for appeal on March 28, 2011. ECF No. 6, Ex. 3.

Thereafter, Mason filed a state habeas corpus petition in the Circuit Court for the City of Staunton, in which he raised three ineffective assistance of counsel claims. ECF No. 6, Ex. 4 at 2-3. That petition was denied, ECF No. 6, Ex. 4, and the SCV subsequently refused the petition for appeal on June 26, 2012. Id. at 21.

On August 30, 2012, Mason timely filed his present federal habeas corpus petition in which he raises four claims. ECF No. 1. The first is a claim that there was insufficient evidence of premeditation and thus his conviction on the first-degree murder charge should be vacated. The remaining three claims all allege that his trial attorneys rendered ineffective assistance in failing to investigate and present an intoxication defense, and in failing to present certain evidence in support of such a defense. See generally id. Respondent filed an Answer and Motion to Dismiss, with Supporting Brief, ECF Nos. 4-6, and Mason has responded. ECF No. 12. Respondent concedes that Mason has exhausted the claims in his Petition, and that they are properly before this Court. ECF No. 6 at 4.

## II.    Standard of Review

Federal courts conduct habeas corpus review of state convictions employing a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Deyton v. Keller, 682 F.3d 340, 344-45 (4th Cir. 2012)

4

(citation omitted). Thus, pursuant to the reforms of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal habeas court may only grant habeas relief "with respect to any claim that was adjudicated on the merits" in state court if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); Deyton, 682 F.3d at 345 (quoting same).

A state court decision is "contrary to" the Supreme Court's clearly established precedent if (1) the state court "arrives at a conclusion opposite to that reached by the Supreme Court as a matter of law" or (2) the state court "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that reached by the Supreme Court. Williams v. Taylor, 529 U.S. 362, 405 (2000).

Similarly, a state court decision constitutes an "unreasonable application" of clearly established federal law if the state court (1) identifies the correct legal rule but unreasonably applies it to the facts of the particular case; (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply; or (3) "unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407. The "application must be 'objectively unreasonable'" before a court may grant habeas relief. Renico v. Lett, 559 U.S. 766, 130 S. Ct. 1855, 1862 (2010). That is, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007). A federal court may not disturb the sound judgment of the state court and find "an unreasonable application of federal law unless the state court's decision lies well outside

5

the boundaries of permissible differences of opinion." Tice v. Johnson, 647 F.3d 87, 108 (4th Cir. 2011) (internal quotation marks omitted). If the foregoing standard "is difficult to meet, that is because it was meant to be." Harrington v. Richter, __ U.S. __, 131 S. Ct. 770, 786 (2011).

## III.   Analysis of Mason's Claims

### A. Claim One—Sufficiency of the Evidence

With regard to Mason's challenge to the sufficiency of the evidence, he "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."[6] Jackson v. Virginia, 443 U.S. 307, 324 (1979); Wilson v. Greene, 155 F.3d 396, 405-06 (4th Cir. 1998). Indeed, "the Jackson inquiry does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 506 U.S. 390, 402 (1993) (emphasis omitted).

Here, the evidence clearly supports that the jury made a rational decision to convict on the first-degree murder charge and, in particular, there was ample evidence to support a finding that the murder was premeditated. The CAV, in rejecting this same argument in Mason's direct appeal, correctly set forth the Virginia law concerning premeditation:

> "'To premeditate means to adopt a specific intent to kill, and that is what distinguishes first and second degree murder.'" Kirby v. Commonwealth, 50 Va. App. 691, 700, 653 S.E.2d 600, 604 (2007) (quoting Remington v. Commonwealth, 262 Va. 333, 352, 551 S.E.2d 620, 632 (2001)). Such intent "'need not exist for any specified length of time prior to the actual killing; the design to kill may be formed only a moment before the fatal act is committed provided the accused had time to think and did intend to kill.'" Remington, 262 Va. at 352, 551 S.E.2d at 632.

---

[6] This Court's review of the evidence is limited to the record evidence. Herrera v. Collins, 506 U.S. 390, 402 (1993).

ECF No. 6, Ex. 2 at 3. Additionally, the fact question of whether a murder was premeditated is "in the province of the jury." Id. (citing Epperly v. Commonwealth, 294 S.E.2d 882, 892 (Va. 1982)).

Mason argues, in response to the motion to dismiss, that the Commonwealth presented no direct evidence "to explain exactly how [the victim] was fatally shot and that Mason was without a doubt the 'mens rea' responsible for her death." ECF No. 12 at 3. He claims that the "direct evidence" in the case "only shows an argument occurred; the sound of a single gunshot heard, and the observation of Mason leaving the scene of the shooting." Id. While it is true that no witness testified that Mason stopped for a moment to think about shooting his victim before doing so, that type of evidence is not required to support a finding of premeditation. See Remington, 551 S.E.2d at 632.

Contrary to Mason's arguments then, and as the CAV correctly observed, there was ample evidence in the record to support the jury's finding that the murder was premeditated. Indeed, as that court noted, the jury may consider a number of factors as bearing on whether the killing was premeditated, including the defendant's lack of remorse and efforts to avoid detection. ECF No. 6, Ex. 2 at 3 (citing Epperly, 294 S.E.2d at 892). The CAV's recitation of the supporting evidence, as well as additional evidence of record, plainly shows that the jury's finding of premeditation was rational. See Jackson, 443 U.S. at 324; Herrera, 506 U.S. at 402.

First of all, Mason obtained his mother's gun (she later reported it stolen) and took it with him when he went to meet Amanda. There was evidence that Mason had left Amanda a voicemail on her phone in the early morning hours on the day of the shooting, in which he stated, "I hope you die." Trial Tr. at 101. Moreover, after a witness to the murder saw Mason and Amanda arguing by Mason's vehicle and then heard the gunshot, he observed Mason

immediately flee the scene. Mason's further efforts to avoid detection included lying to Trooper

Horton about the source of the blood found in his vehicle. Additionally, as noted by the CAV,

> [i]n tape recordings of telephone calls [Mason] made while he was
> in jail, [he] admitted he stole his mother's gun, and he discussed
> the possibility of various defenses to the charges. In addition, two
> inmates testified that [Mason] discussed the incident with them.
> Gary Frees testified [Mason] bragged about the killing, [he] did not
> show remorse, [he] discussed "beating" the charges by pleading
> insanity, and he stated he wished he had killed a child who may
> have witnessed the incident. James Farris testified [Mason] said, "I
> told the bitch I was going to kill her. I guess she didn't believe
> me."

ECF No. 6, Ex. 2 at 3-4.

The CAV's consideration of the record evidence in this case, although on direct appeal,

was consistent with the <u>Jackson</u> standard for habeas review.[7] The CAV correctly stated the

applicable Virginia law regarding premeditation for purposes of establishing first-degree murder

and cited to the evidence in this case that supported the jury's finding. This Court has no

difficulty concluding that its ruling was neither "contrary to . . . clearly established Federal law,

as determined by the Supreme Court," nor an "unreasonable determination of the facts before it."

28 U.S.C. § 2254(d); <u>Deyton</u>, 682 F.3d at 345. The Court concludes, therefore, that Mason is not

entitled to habeas relief on his first claim.

### B.  Ineffective Assistance of Trial Counsel Claims

#### 1.  Standards for Evaluating Ineffective Assistance of Counsel Claims

Mason's remaining three claims all allege that his trial attorneys provided constitutionally

ineffective assistance of counsel. In evaluating ineffective assistance claims the court looks to the

---

[7] When a state's highest court does not rule on the merits, as is the case here, a federal court may look through that decision to the underlying merits opinion. <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803-04 (1991). Here, as to Mason's first claim, the underlying merits opinion is the CAV opinion in his direct appeal.

familiar two-prong test delineated in Strickland v. Washington, 466 U.S. 668 (1984). See Knowles v. Mirzayance, 556 U.S. 111, 122-23 (2009) ("Indeed, this Court has repeatedly applied [Strickland] to evaluate ineffective-assistance-of-counsel claims where there is no other Supreme Court precedent directly on point"). Under Strickland, a successful claim for ineffective assistance of counsel must establish (1) that counsel's performance fell below an objective standard of reasonableness, such that counsel was not acting as the counsel guaranteed by the Sixth Amendment; and (2) that but for counsel's objectively unreasonable performance, there is a reasonable probability the outcome of the trial would have been different. Strickland, 466 U.S. at 687–91. There is no need "to address both components"; rather, if a reviewing court determines that the petitioner's claim fails on either the performance or the prejudice prong of the Strickland test, the court's inquiry may stop there. Id. at 697.

To establish deficient performance, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. This requires proof that "counsel's representation fell below an objective standard of reasonableness." Id. at 688. In fairly evaluating an attorney's conduct, "judicial scrutiny . . . must be highly deferential, and "every effort [must] be made to eliminate the distorting effects of hindsight." Id. at 689; Yarbrough v. Johnson, 520 F.3d 329, 337 (4th Cir. 2008). Thus, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690.

To establish prejudice, a petitioner "must show that there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Supreme Court has defined a "reasonable probability" as "a

9

probability sufficient to undermine confidence in the outcome." Id. at 694. Specifically, "[w]hen a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent [counsel's] errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695. However, that is not to say the petitioner must prove that the jury's verdict would have been different. Gray v. Branker, 529 F.3d 220, 234-35 (4th Cir. 2008) (reversing and awarding habeas relief because the state court, in assessing prejudice, asked whether the "jury would necessarily" have reached a different conclusion but for counsel's deficiency). Under this standard, "[t]he likelihood of a different result must be substantial, not just conceivable." Harrington, 131 S. Ct. at 792.

In the context of a habeas petition, the Strickland standard has been described as "doubly deferential" because the deferential review under AEDPA overlaps with the deferential standard under Strickland. Cullen v. Pinholster, __ U.S. __, 131 S. Ct. 1388, 1410-1411 (2011). Courts must "apply the two standards simultaneously rather than sequentially," which "imposes a very high burden for a petitioner to overcome, because these standards are each 'highly deferential' to the state court's adjudication and, 'when the two apply in tandem, review is doubly so.'" Richardson v. Branker, 668 F.3d 128, 139 (4th Cir. 2012) (quoting Harrington, 131 S. Ct. at 788) (citations omitted).

Here, it is undisputed that the state court applied the correct legal standard—Strickland— to determine whether trial counsel provided effective assistance. Thus, in order to be granted relief, Mason must demonstrate that the state court denial of his claims was an "unreasonable application" of the Strickland standard, 28 U.S.C. § 2254(d)(1). With these principles in mind, the Court now turns to each of Mason's ineffective assistance claims.

## 2. Voluntary Intoxication As a Defense Under Virginia Law

Mason's ineffective assistance claims all relate to his assertion that his counsel should have investigated and presented evidence to support a voluntary intoxication defense. In evaluating his claims, it is important to understand the limited applicability of a voluntary intoxication defense. Specifically, in Virginia, intoxication is only a defense to first-degree murder "when a person voluntarily becomes so intoxicated that he is incapable of deliberation or premeditation." Wright v. Commonwealth, 363 S.E.2d 711, 712 (Va. 1988). Indeed, "[e]ven in the face of evidence of extreme intoxication from alcohol or drugs, the factfinder may find willfulness, premeditation and deliberation if there is proof that the defendant was 'in full control of his faculties and knew exactly what he intended to do.'" Savino v. Murray, 82 F.3d 593, 602 (4th Cir. 1996) (citations omitted). As the Fourth Circuit has explained,

> [i]n determining whether the evidence supports a voluntary intoxication defense, Virginia courts look to the defendant's behavior before and after the offense. See, e.g., Giarratano v. Commonwealth, 220 Va. 1064, 266 S.E.2d 94, 99 (1980). Relevant behaviors include attempts to conceal the crime, see id. at 100 (noting that defendant killed second person in order to conceal first murder); a lapse of time between ingestion of intoxicants and the crime, see Hedrick v. Warden, 264 Va. 486, 570 S.E.2d 840, 851 (2002); whether the conduct of the defendant was "planned and purposeful," id.; and whether the defendant was able to engage in complex behaviors such as operating an automobile, see Lilly v. Commonwealth, 255 Va. 558, 499 S.E.2d 522, 536 (1998), rev'd on other grounds, 527 U.S. 116, 119 S. Ct. 1887, 144 L.Ed.2d 117 (1999).

Reid v. True, 349 F.3d 788, 800 (4th Cir. 2003).

## 3. Claim Two - Counsel Was Ineffective for Failing to Investigate and Present an Intoxication Defense (State Habeas Claim A)

In Claim Two, Mason contends that his counsel was ineffective for failing to investigate and present an intoxication defense. Specifically, Mason argues, as he did in his habeas action in

11

the state courts, that his medical records and an affidavit from his mother showed that he had

drug and alcohol problems and that he was intoxicated the morning before the incident and in the

afternoon afterwards. ECF No. 1, Ex. E, Linda Mason Aff.; see also ECF No. 6, Ex. 4 at 6

(habeas court opinion describing Mason's Claim A). In her affidavit, dated August 31, 2011,

Mason's mother avers that Mason "was addicted to prescribed medication and alcohol" on the

date of the murder, and that, on the night before the shooting, Mason

> came home . . . extremely intoxicated, and stayed up all night in
> the chair with the television on. On Sunday, [the date of the
> shooting, Mason] left my home early that morning intoxicated, and
> saying weird stuff, and he just ran out the door. He called me in the
> afternoon, right after the crime, talking out of his head; I could not
> understand what he was saying. I knew he was extremely
> intoxicated and disoriented and very irrational at that time.

ECF No. 1, Ex. E, L. Mason Aff. at ¶¶ 1, 2. According to Linda Mason's affidavit, however,

Mason's attorneys told her those facts were "not an excuse" for the murder and would "do no

good" in his case. ECF No 6, Ex. 4 at 6; see also L. Mason Aff. at ¶¶ 4-5. Mason now claims that

advice was deficient and that his counsel were ineffective for failing to pursue an intoxication

defense.

The state habeas court rejected Mason's claim for two independent reasons. ECF No. 6,

Ext. 4 at 6-10. First, that court concluded that the claim was barred because it contradicted

Mason's prior sworn statements to the trial court, which he made immediately preceding the

trial. See Trial Tr. at 3-5. At that time, Mason testified that he had discussed with his attorneys

the elements of the charges and what the Commonwealth had to prove, any possible defenses

(which would necessarily include the defense of intoxication, assuming the veracity of his

mother's affidavit), and he told the Court he was entirely satisfied with his attorneys' services.

Id. at 4-5. Relying on Anderson v. Warden, 281 S.E.2d 885, 888 (Va. 1981), which prohibits a

habeas petitioner from relying on claims that are contradicted by his own sworn statements during a plea colloquy, the habeas court concluded that this claim could not proceed. See ECF No. 6, Ex. 4 at 6-7 (citing Anderson and Beck v. Angelone, 261 F.3d 377, 396 (4th Cir. 2001)). As discussed below, this Court concludes that the habeas court's rejection of the claim on its merits was a reasonable application of existing law, and thus it need not address whether the habeas court properly determined that Mason's statements under oath precluded him from bringing the claim.

The second reason offered by the habeas court for rejecting this claim was that the claim failed on the merits, both as to the alleged failure to investigate (which this Court addresses first) and the failure to present the defense. The habeas court noted specifically that, although Mason alleged a failure to investigate his alleged intoxication, he acknowledged that his attorneys in fact had the relevant information prior to trial, including the medical records. ECF No. 6, Ex. 4 at 8.[8] Thus, he failed to demonstrate what additional investigation would have revealed or how it would have altered the outcome of the trial. Id. (quoting Beaver v. Thompson, 93 F.3d 1186, 1194 (4th Cir. 1996) ("allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced").) This alone dooms Mason's claim, because it is his burden to establish both Strickland prongs. Indeed, "'without a specific, affirmative showing of what the missing evidence or testimony would have been, 'a habeas court cannot even begin to apply Strickland's standards' because 'it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance.'"

---

[8] As the habeas court also recognized, Mason's medical records "[did] nothing to establish that he was intoxicated and unable to form the intent to commit first degree murder on the day of the shooting." ECF No. 6, Ex. 4 at 8.

Anderson v. Collins, 18 F.3d 1208, 1221 (5th Cir. 1994) (quoting United States v. Lane, 926 F.2d 694, 701 (7th Cir. 1991)). In short, the Court cannot conclude that the habeas court's decision—i.e., that Mason failed to establish ineffective assistance based on an inadequate investigation—was an unreasonable application of federal law.

Similarly, as to counsels' decision not to present a voluntary intoxication defense, the habeas court reasonably found no deficiency or prejudice. As noted by the habeas court, "[o]nce counsel is appointed to represent petitioner, counsel has control over the presentation of the case, and it was for counsel to decide the best defense strategy. See Townes v. Commonwealth, 362 S.E.2d 650, 657 (Va. 1987)." ECF No. 6, Ex. 4 at 12. Indeed, the decision regarding which arguments to make and what evidence to present at trial lies within the discretion of trial counsel. Gonzalez v. United States, 553 U.S. 242, 249 (2008); Taylor v. Illinois, 484 U.S. 400, 418 (1988). This rule recognizes the complexity of the law at stake, the importance of the rights at stake for the accused, and the practical necessities of trial. The Supreme Court has explained:

> Numerous choices affecting conduct of the trial, including the objections to make, the witnesses to call, and the arguments to advance, depend not only upon what is permissible under the rules of evidence and procedure but also upon tactical considerations of the moment and the larger strategic plan for the trial. These matters can be difficult to explain to a layperson; and to require in all instances that they be approved by the client could risk compromising the efficiencies and fairness that the trial process is designed to promote. In exercising professional judgment, moreover, the attorney draws upon the expertise and experience that members of the bar should bring to the trial process. In most instances the attorney will have a better understanding of the procedural choices than the client; or at least the law should so assume.

Gonzalez, 553 U.S. at 249-50. Examination of the trial record shows that Mason's trial attorneys comported themselves well within the bounds of professional competence.

14

Additionally, the decision not to pursue the defense must be considered in light of the entire record at trial. Here, Mason's trial attorneys were faced with the testimony of his mother, on the one hand, that Mason was severely intoxicated when he left the house in the morning and called her in an intoxicated state and not making sense immediately following the crime. It is plausible that the mother's testimony, assuming it was consistent with her affidavit and believed by the jury, would have been <u>some</u> evidence supporting an intoxication defense. But the question before this Court is whether counsel was deficient for failing to call her and put on that defense. On this point, the Court easily concludes that the habeas court's conclusion that counsel was not deficient was not an unreasonable application of established federal law.

Here, no affidavit from trial counsel has been presented, so the Court does not know the precise reason that counsel elected not to pursue an intoxication defense. Nonetheless, the record provides ample justification for that decision, particularly in light of the applicable legal standard, under which "counsel is not ineffective merely because he overlooks one strategy while vigilantly pursuing another." <u>Williams v. Kelly</u>, 816 F.2d 939, 950 (4th Cir. 1987); <u>see also</u> <u>United States v. Luck</u>, 611 F.3d 183, 186 (4th Cir. 2010) (quoting <u>Strickland</u>, 466 U.S. at 689, and noting that "[t]he defendant must …overcome the presumption that the representation 'might be considered sound trial strategy.'") In this case, the habeas court correctly recognized both that the testimony of the defendant's mother would have been of dubious additional value and that there was significant record evidence that contradicted such a claim. Both of these factors strongly support the habeas court's conclusion that counsel was not deficient for failing to pursue the defense, and Mason has not presented evidence to overcome the presumption that it was a sound trial strategy not to pursue it.

15

The habeas court's explanation on this point is cogent and worth reiterating in full:

> [T]he fact that petitioner's mother alleges two years after her son was sentenced to life plus eight years imprisonment that he was intoxicated at the time of the shooting counts for little and counsel was not ineffective for making a tactical decision not to have her testify at trial. Indeed, the testimony of petitioner's mother must be evaluated "in light of the potential bias inherent in such testimony." Huffington v. Nuth, 140 F.3d 572, 581 (4th Cir. 1998) (citing Romero v. Tansy, 46 F.3d 1024, 1030 (10th Cir. 1995) (testimony of defendant's family members is of less value than that of objective witnesses); Gullett v. Armontrout, 894 F.2d 208, 310 (8th Cir. 1990) (testimony of wife "would in all probability not have changed the verdict of the jury given [her] . . . obvious bias")). Moreover, the contention of petitioner's mother that her son was intoxicated at the time of the shooting is belied by the other evidence presented at trial. Although the prescription drug Xanax was found in the trunk of the petitioner's car as depicted on the videotape from Trooper Horton's cruiser, the petitioner admitted he had not been using the drug. This undercuts his and his mother's current contention . . . Moreover, the petitioner told Horton that he started drinking *after* the accident. This too undercuts petitioner's and his mother's current contention that he was under the influence of alcohol and could not have formed the requisite intent to commit first degree murder. In any event, as the Court of Appeals stated in its per curiam order, the video shows that, although the petitioner was under the influence at the time Horton came upon petitioner's vehicle in the ditch, which was some five hours after the murder, petitioner had control of his faculties and understood the situation.

> Further evidence from the trial also establishes petitioner was not intoxicated and had formed the requisite intent to kill his victim. The victim and the petitioner had broken up on the Friday before the Sunday afternoon killing. Petitioner came to the house where the victim was working as a live-in nanny. Because of his concerns for the victim's safety, her employer had instructed the victim not to open the door to the Petitioner. Thus, the first time the petitioner came to the house on that Sunday afternoon, the victim did not open the door. Petitioner left. Petitioner returned about an hour later, with the gun he had stolen from his mother, and he got the victim to come outside under the pretext that he was going to give her the $100.00 he owed her and return her class ring. The victim came out to the petitioner's car where an argument ensued by the passenger side of the car for approximately 3-5 minutes. One of the children the victim was employed to care for witnessed the

16

argument. Then, petitioner shot the victim in the head from approximately two feet away, ran to the driver's side and jumped into his car and sped away with the passenger side door still open. That evidence demonstrates the petitioner's deliberate intent to kill and undercuts the current contention by petitioner and his mother that petitioner was intoxicated at the time of the killing. In addition, there was evidence that petitioner told another jail inmate that he would try to get off on an insanity defense or say he [was] on a bad acid trip at the time of the killing in order to avoid conviction.[9]

ECF No. 6, Ex. 4 at 14-16.

The foregoing adequately explains why counsel was not constitutionally ineffective for not pursuing an intoxication defense. The Court thus concludes that the habeas court's rationale for denying the claim was neither an unreasonable application of "clearly established Federal law," nor based on "an unreasonable determination of the facts." See 28 U.S.C. § 2254(d).

This conclusion is bolstered by decisions in other cases. Although cases on this issue are obviously fact-specific, the Fourth Circuit has repeatedly upheld habeas decisions rejecting similar claims. See, e.g., Hedrick v. True, 443 F.3d 342, 356 (4th Cir. 2006) (in habeas case reviewing capital murder charge, affirming dismissal of ineffective assistance of counsel claim based on counsel's failure to adequately develop a voluntary intoxication defense where accounts of the defendant's alcohol and drug intake were "vague and inconsistent" and where no one "could opine with any certainty" that he was intoxicated at the time he committed the murder"); Reid, 349 F.3d at 801-802 (counsel was not ineffective for failing to pursue a voluntary intoxication defense, even though there were some factors that supported such a defense, where

---

[9] As alluded to by this quotation, the jury heard recorded calls made by Mason from jail, in which he discussed or strategized about the possibility of avoiding conviction by claiming he was on an "acid trip" or otherwise on drugs and out of it. This was also corroborated by one of the inmate witnesses who testified at his trial. Defense counsel clearly had to consider the fact that the jury could view an intoxication defense as simply part of a made-up scheme to avoid conviction, particularly where the only evidence to support the defense came from Defendant's mother, who has obvious bias.

there was other evidence that showed defendant was capable of planned and purposeful conduct); Savino, 82 F.3d at 602 (counsel not ineffective for failing to pursue intoxication defense where, although a defense expert concluded defendant was suffering from a cocaine-linked psychosis and possibly delusions at the time of the killing, there was other evidence that was "more than sufficient to show premeditation," including pre-murder discussions with a friend about the idea of killing the victim, his decision to avoid using the telephone at the house after the killing and instead using a pay phone, and his clear recollection of the events when recounting the killing to the police). These holdings, too, support the conclusion that the state habeas court here did not err in concluding that counsel was not deficient for failing to present an intoxication defense.

For all of these reasons, Mason's Claim Two is denied.

### 4. Claims Three and Four – Counsel Was Ineffective for Failing to Present Testimonial and Documentary Evidence Regarding an Intoxication Defense

As noted, Claims Three and Four are related to Claim Two. In Claim Three, Mason asserts that his counsel was ineffective for failing to call his mother as a witness and for failing to question Trooper Horton regarding Mason's intoxication at the time of the offense. In Claim Four, he contends that counsel was ineffective for failing to present evidence of his breathalyzer test, taken more than seven hours after the murder (at 10:22 p.m.), showing that he was over the legal limit at that time. ECF No. 1-2 at 4-5.

The claim based on a failure to put on such testimony from his mother fails for the reasons discussed in conjunction with the Court's analysis of Claim Two. Quite simply, the habeas court reasonably determined that counsel's decision not to pursue an intoxication defense or to present the testimony from Mason's mother did not constitute constitutionally ineffective assistance.

As to Mason's arguments concerning possible testimony by Trooper Horton or the result of his breathalyzer test, they miss the mark. Most significantly, Mason's behavior or blood alcohol levels almost eight hours <u>after</u> the murder would not have allowed the jury to find he was so severely impaired at the time of the murder that he could not form the specific intent to kill. <u>See</u> <u>Reid</u>, 349 F.3d at 800 (intoxication defense requires defendant to be so intoxicated at the time of the murder that he is incapable of deliberation or premeditation). This is particularly true where Mason repeatedly denied to Trooper Horton that he had engaged in any heavy drinking or taken any medications in the morning or early afternoon hours, or, indeed, at any time prior to the murder. Instead, Mason told Trooper Horton that he started drinking 2-3 hours before the car accident, which was well after the shooting. (Trial Tr. at 213.)

Moreover, it is not at all clear that any additional questioning of Trooper Horton's testimony would have aided any voluntary intoxication theory. The jury saw video of the traffic stop, and Trooper Horton testified that Mason was capable of responding to questions; feigned being sick or injured and was able to stop such behavior when so instructed; and gave false explanations for the blood found in his car. Accordingly, at the time of the stop (which, again, does not prove Mason's condition at the time of the shooting), it does not appear that Mason's behavior would have supported the jury finding he had established a voluntary intoxication defense. <u>See</u> <u>Reid</u>, 349 F.3d at 800 (describing the severe levels of impairment that must be present to establish the defense and factors to consider). In short, the state court's application of <u>Strickland</u> to these facts was not incorrect, let alone unreasonable.

For all of these reasons, the state court's holding that Mason did not show ineffective assistance under <u>Strickland</u> was not unreasonable and this Court must dismiss Claims Two, Three, and Four.

## IV.     Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts requires that the Court issue or deny a certificate of appealability when it enters a final order "adverse to" a federal habeas petitioner. A certificate of appealability will not issue unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order to do so, the petitioner must show that reasonable jurists could disagree about the petition's merits or that "the issues presented [are] adequate to deserve encouragement to proceed further." Miller–El v. Cockrell, 537 U.S. 322, 336 (2003) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotation marks omitted)). Having considered the record and the relevant legal standards, the Court finds that Mason has not made the requisite substantial showing, and a certificate of appealability is therefore **DENIED.**

## V.     Conclusion

For the reasons discussed above, the Respondent's Motion to Dismiss, ECF No. 4, is **GRANTED** and the Petition for a Writ of Habeas Corpus, ECF No. 1, is **DISMISSED.** An appropriate order shall issue this day.

ENTER: This _26th_ day of March, 2013

James C. Turk
Senior United States District Judge

20